## Allstate Insurance Co. v. Fodor

542

C.P. of Monroe County, no. 8428 Civil 1999.

*Kevin C. Reid,* for plaintiff.
*Curtis R. Quay,* for defendants Fodor.
*Patrick J. Murphy,* for defendants Edinger & Butler Park Self Storage.
*Bradley D. Remick,* for defendant The Stanley Works.

CHESLOCK, *J.,* October 12, 2000—In 1998, defendants Richard and Cynthia Fodor, policyholders, commenced a legal action against Paul A. Edinger t/a Butler Park Self Storage Inc. and The Stanley Works for injuries sustained by their minor daughter, Louise Fodor, while she had been playing on an automatic security gate located on the Butler Park defendant's business premises.[1] In his answer to the defendant policyholders' com-

1. This matter is docketed with the Court of Common Pleas of Monroe County at 7994 Civil 1998.

plaint in the underlying tort action, the Butler Park defendant joined the defendant policyholders as additional defendants. The defendant policyholders then requested the plaintiff, Allstate Insurance Company, to provide them with a defense and indemnification against any potential liability for their daughter's injuries. The defendant policyholders' request was made pursuant to the Allstate Deluxe Homeowners Policy bearing policy no. 028546309 and the Allstate Personal Umbrella Policy bearing policy no. 018168599, which were issued by the plaintiff and in full force and effect during the relevant time frame.

The plaintiff responded to the defendant policyholders' request by filing the above-captioned declaratory judgment action alleging that the plaintiff is not obligated to provide a defense or indemnification to the defendant policyholders because of exclusionary language contained in the above-referenced insurance policies. Plaintiff then filed a motion for summary judgment based on the applicable policy language. On October 2, 2000, this court heard arguments regarding plaintiff's motion. We are now ready to rule on plaintiff's motion.

At this time, we note that the defendant policyholders do not oppose the plaintiff's motion for summary judgment. Rather, the Butler Park defendant opposes plaintiff's motion.[2]

---

2. With respect to the above-captioned matter, this court notes that the plaintiff insures only the defendant policyholders. As such, we question whether the Butler Park defendant has standing to oppose the plaintiff's motion in this declaratory judgment action. See *Lititz Mutual Insurance Co. v. Steely*, 746 A.2d 607, 609 (Pa. Super. 1999) (stating that "while a [third party] may be intimately involved in the under-

To begin, we note that a declaratory judgment action[3] is the proper procedure by which a court may determine the rights, responsibilities, status and/or obligations of one party standing in a legal relationship with another party. See *General Accident Insurance Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997) and *Aetna Casualty & Surety Co. v. Roe,* 437 Pa. Super. 414, 422, 650 A.2d 94, 99 (1994). Moreover, the purpose of a declaratory judgment action is to expedite the settlement of claims and to provide practical assistance in resolving controversies before they require adjudication. *Id.* at 423, 650 A.2d at 99. Additionally, in a matter involving a dispute over insurance coverage, as in the instant case, a declaratory judgment action provides the court with the opportunity to determine the scope of the applicable insurance policy in relation to the claims presented. *Id.* at 422, 650 A.2d at 99. Thus, plaintiff's motion is properly before this court so that we may determine the scope of insurance coverage and the rights and responsibilities of the parties in this matter.

In a declaratory judgment action concerning applicable insurance coverage, the court's first step is to determine

---

lying lawsuit, they have no standing before this court on the matter of whether [the insurance company] owes a duty to defend to their policyholder[.]") *Id.* at 609 n.2. Nonetheless, being that the parties to the instant action have not challenged the Butler Park defendant's standing to oppose the plaintiff's motion, this court will not raise such an issue sua sponte. Rather, we shall rule on plaintiff's motion and irrespective of the standing issue, we conclude that summary judgment is indeed appropriate in this matter and supported by a myriad of case law.

3. See 42 Pa.C.S. §7531 et seq. (generally referred to as the "Declaratory Judgments Act").

the scope of the insurance policy's coverage. *General Accident Insurance Co. of America,* 547 Pa. at 706, 692 A.2d at 1095. Second, the court must, then ascertain if the allegations in the underlying complaint trigger coverage under the relevant policy. *Id.* Accordingly, "if the complaint against the insured avers facts that would support recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover." *Id.* Moreover, if the insurance company is required to defend the policyholder because coverage has been triggered, then the insurance company is also conditionally obligated to provide the policyholder with indemnification if necessary. *General Accident Insurance Co. of America,* 547 Pa. at 707, 692 A.2d at 1095. Thus, the relevant inquiry before this court is whether the scope of the defendant policyholders' insurance policies extends to tort actions such as the ones alleged in the underlying personal injury action.

Initially, we note that summary judgment is available in declaratory judgment actions. *Neil v. Allstate Insurance Co.,* 379 Pa. Super. 299, 302, 549 A.2d 1304, 1305 (1998). We further note that the question of whether a particular claim falls within the scope of coverage of an insurance policy is a question of law that may be decided on a motion for summary judgment. *Id.*

In determining whether summary judgment is appropriate, this court must examine the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, to determine if any genuine issues of material fact exist and whether the moving party

is entitled to judgment as a matter of law. See *e.g., Aetna Casualty & Surety Co.,* 437 Pa. Super. at 420, 650 A.2d at 97 and *Neil,* 379 Pa. Super. at 302, 549 A.2d at 1305. Additionally, the record must be examined in the light most favorable to the non-moving party and, in doing so, all well-pleaded facts are accepted as true and that non-moving party is given the benefit of all reasonable inferences drawn therefrom. *Neil,* 379 Pa. Super. at 302, 549 A.2d at 1305. Moreover, summary judgment is only proper in cases that are clear and free from doubt and as such, the moving party must clearly establish that there is an absence of genuine issues as to any material facts. *Lititz Mutual Insurance Co. v. Steely,* 746 A.2d 607, 609 (Pa. Super. 1999) and *Neil,* 379 Pa. Super. at 302, 549 A.2d at 1305. Thus, a court may only grant summary judgment in those cases where the moving party can point to "sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Lititz,* 746 A.2d at 609. With these standards in mind, we turn to the substance of plaintiff's motion.

We begin by reciting several well-settled principles of law. First, the proper construction and interpretation of an insurance policy and the inclusive language is a question of law for the court to resolve. *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Accordingly, where a policy provision is unclear and ambiguous, the court must construe the language in favor of the policyholder. *Id.* On the other hand, where the policy language is clear and free from doubt, the court must give full

effect to that policy provision. *Id.* "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Id.* Moreover, in determining whether the policy terms or language is ambiguous or vague, the terms or language in question must be considered in the context of the entire policy and not set apart from the remaining provisions that are clear or free from doubt. *Riccio v. American Republic Insurance Co.,* 453 Pa. Super. 364, 373, 683 A.2d 1226, 1231 (1996). Additionally, the court should not distort or alter the meaning of contractual terms in an effort to find an ambiguity in the contract.[4] *Madison Construction Co.,* 557 Pa. at 606, 735 A.2d at 106. Thus, the relevant focus of the court's inquiry is on the language of the defendant policyholders' insurance contracts with the plaintiff.

In the instant matter, the plaintiff contends that the relevant language of the Allstate Deluxe Homeowners' Policy and the Allstate Personal Umbrella Policy unmistakably preclude the plaintiff from providing the defendant policyholders with a defense or indemnification to the underlying action. As set forth in the policies, the following exclusionary language is included in the defendant policyholders' insurance contracts.

"*Section II—Family liability and guest medical protection.*

"*Coverage X—Family liability protection.*

---

4. Additionally, the court in *Riccio* stated that Pennsylvania courts should strive "to avoid ambiguities, if possible, and not torture [the contractual] language to create them." *Riccio,* 453 Pa. Super. at 377, 683 A.2d at 1233.

*"Losses we do not cover under coverage X:*

"(2) *We* do not cover *bodily injury* to an *insured person* or property damage to property owned by an *insured person* whenever any benefit of this coverage would accrue directly or indirectly to an insured person." See Allstate Deluxe Homeowners Policy p. 27. (emphasis in original)

The homeowners' insurance policy defines "insured person" as follows.

*"Definitions used in this policy.*

"(3) *'Insured person(s)'*—means *you* and, if a resident of *your* household:

"(a) any relative; and

"(b) any dependent person in your care." See Allstate Deluxe Homeowners Policy p. 3. (emphasis in original)

Additionally, the defendant policyholders' personal umbrella policy contains similar exclusionary language with respect to personal injuries.

*"Exclusions.*

*"General exclusions—When this policy does not apply.*

"This policy will not apply:

"(3) to *personal injury* to an *insured."* See Allstate Personal Umbrella Policy p. 9. (emphasis in original)

Moreover, the plaintiff's definition of an "insured person" in this personal umbrella policy is similar to the definition set forth in the plaintiff's homeowners' policy.

*"General. Definitions.*

"(7) *'Insured'*—mean:

"(a) *you* and

"(b) relative residing in *your* household." See Allstate Personal Umbrella Policy p. 2. (emphasis in original)

In focusing on the above language set forth in the insurance contracts between the plaintiff and the defendant policyholders, we do not find any ambiguities, uncertainties or any language reasonably susceptible of different interpretations. Rather, we find the language clear, definite and easily understandable by the average insured individual. Thus, we are required to give effect to the exclusionary language in this insurance policy and, in doing so, we conclude that the plaintiff is not obligated to provide the defendant policyholders with a defense or indemnification in the underlying tort action.

Second, we note that Pennsylvania courts have consistently and repeatedly upheld the unambiguous and explicit exclusionary clauses contained in an insurance policy. *Riccio,* 453 Pa. Super. at 373, 683 A.2d at 1231. A policyholder should not expect limitless insurance coverage when there is an explicit, lucid clause to the contrary apparent in the contract. *Id.* Exclusionary clauses are valid and effectively preclude coverage by the insurance provider in all cases where the pertinent language is incontrovertible and unequivocal. *Id.* Moreover, such exclusionary clauses do not violate public policy but rather, many courts suggest that such clauses prevent collusive litigation. See *e.g., Lambert v. McClure,* 407 Pa. Super. 257, 264, 595 A.2d 629, 634 (1991) (Wieand, J. dissenting) and *Neil,* 379 Pa. Super. at 306-307, 549 A.2d at 1306-1307. Therefore, an insurance provider may properly exclude areas of coverage from a policy so long as the language is clear and unambiguous. As stated

above, we find the language in this instance to be clear, concise and explicit and will accordingly uphold the exclusionary clause in the defendant policyholders' insurance policies.

Third, we note that the goal of contract interpretation and construction is to effectuate the intent of the parties manifested by the written document memorializing the insurance contract. *Madison Construction Co.,* 557 Pa. at 606, 735 A.2d at 106. Consequently, the proper focus for the court's inquiry is the reasonable expectations of the parties to the insurance contract. *Bubis v. Prudential Property & Casualty Insurance Co.,* 718 A.2d 1270, 1272 (Pa. Super. 1998). Generally, to determine the reasonable expectations of the parties, the court must look to the totality of the circumstances of the transaction involved. *Id.* An insured, however, may not allege that his or her reasonable expectations were frustrated or defeated by policy exclusionary provisions that are clear and unambiguous. *Id.* Moreover, the policyholder's failure to read the insurance contract and all of its provisions "is an unavailing excuse or defense and cannot justify avoidance, modification or nullification of the contract." *Id.* "While the law provides that an ambiguity in an insurance contract should be read in favor of the insured, this should not hold true when that ambiguity is created by the insured." *Id.* at 1273. Thus, it is unfair to allow a policyholder to benefit from their creation of a confusing situation and the policy exclusion will remain effective and limit the insured's coverage.

In this case, we note that the defendant policyholders do not oppose the plaintiff's motion. Rather, the Butler Park defendant opposes the plaintiff's motion on the

grounds that the policy exclusion is ambiguous and clouded with doubt. Further, we note that the plaintiff under the policies questioned herein does not insure the Butler Park defendant. If the relevant focus is the insured's reasonable expectations of the insurance contract, then the Butler Park defendant's reasonable expectations cannot be frustrated or defeated in this instance. Moreover, the Butler Park defendant cannot be allowed to read an ambiguity into a contract that it was not a party to at its inception. Also, the totality of the circumstances does not suggest that the insurance contract defeated the expectations of any of the parties or that the insurance contract was in any way unfair. Thus, we are compelled to find that the defendant policyholders' reasonable expectations are not frustrated by the policy exclusions and that the Butler Park defendant can have no reasonable expectations to frustrate with respect to a contract to which it is not a party.

Fourth, we note that an insurance provider's duty to defend its insured arises when a third party's complaint triggers coverage as provided for in the scope of the applicable policy. *Mutual Benefit Insurance Co. v. Haver,* 555 Pa. 534, 538, 725 A.2d 743, 745 (1999). An insurance provider's obligation to sue does not arise simply because the company's policyholders are sued, but rather, the obligation arises when the suit falls within the parameters of coverage afforded by the policy. *General Accident Insurance Co. of America,* 547 Pa. at 704, 692 A.2d at 1093. Consequently, to recover under an insurance policy, the policyholder must prove that the claim falls within the applicable scope of coverage as a necessary prerequisite. *Id.* In reaching this conclusion, the Pennsylvania Supreme Court stated:

"Appellants further contend that appellee was under a duty to defend by the provision that the insurer would defend 'even if such suit is groundless, false or fraudulent.' But this applies only *as respects insurance afforded by this policy.*' It does not require defense of *any* suit brought but only suits involving *claims within the scope of the policy,* even though these be groundless, false or fraudulent. In the instant case, there is no question that the claim is founded upon a matter which came within the provision *excluding* the duty of appellee to defend." *General Accident Insurance Co. of America,* 547 Pa. at 703, 692 A.2d at 1093 (emphasis in original) (quoting *Warner v. Employers' Liability Assurance Corp.,* 390 Pa. 62, 66-67, 133 A.2d 231, 233 (1957)).

Thus, an insurance provider's duty to defend arises only when the claim falls within the scope of the applicable insurance coverage. See *e.g., General Accident Insurance Co. of America,* 547 Pa. at 704, 692 A.2d at 1094. If the claim arises outside the applicable coverage of the policy, the insurance provider has no responsibility or obligation to provide the insured with a defense and/or indemnification. *Id.*

Applying the above language to the insurance policies' instant case, we reach an identical conclusion. The defendant policyholders requested the plaintiff to defend them in a personal injury action clearly excluded by the explicit terms of their respective insurance policies. We find that the language of the defendant policyholders to be clear, concise and unambiguously set forth. Consequently, we conclude that the Butler Park defendant cannot survive this summary judgment motion, particularly in light of the well-established line of cases permitting insurance policy exclusionary clauses to be applied.

At this point, we question the Butler Park defendant's capacity to oppose plaintiff's motion on the grounds that the defendant policyholders were unaware of the exclusionary provisions set forth in the body of the insurance policy document. This court finds it difficult to believe that the Butler Park defendant is capable of knowing just what the defendant policyholders were and were not aware of in defendant policyholders' insurance policy. For this reason, the Butler Park defendant's reliance on the *Cornwell v. State Farm Fire and Casualty Company, infra,* decision is misplaced. The *Cornwell* decision stands for the proposition that an exclusionary provision can only be given effect if the insurance provider can establish that the policyholders were aware of the limiting language. See *Cornwell v. State Farm Fire and Casualty Co.,* 527 F. Supp. 310, 313 (E.D. Pa. 1981). There is a long line of cases upholding such exclusionary clauses. See *e.g., Madison Construction Co.,* 557 Pa. 595, 735 A.2d 100 (1999); *General Accident Insurance Co. of America,* 547 Pa. 693, 692 A.2d 1089 (1997); and *Neil,* 379 Pa. Super. 299, 549 A.2d 1304 (1988). Thus, we conclude that the Butler Park defendant is not in a position to rely on the *Cornwell* decision because the Butler Park defendant cannot accurately assert what was within the knowledge of the defendant policyholders as to their insurance policies with the plaintiff.[5]

---

5. In its brief in opposition to plaintiff's motion, the Butler Park defendant asserts that this court should deny plaintiff's motion for summary judgment because the insurance contract between the plaintiff and the defendant policyholders is an adhesion contract. For reason similar to those set forth in the body of this opinion, we also reject this argument. We note that insurance contracts are typically considered contracts of adhesion but this, in itself, is insufficient to render the

For similar reasons, the Butler Park defendant's reliance on the *Hionis* and *Bruno, infra,* decisions is similarly misplaced. In *Bruno,* the court stated that "[e]ven where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and the effect thereof was explained to him." *Selected Risks Insurance Co. v. Bruno,* 555 F. Supp. 590, 592 (M.D. Pa. 1982) (quoting *Hionis v. Northern Mutual Insurance Co.,* 230 Pa. Super. 511, 517, 327 A.2d 363, 365 (1974). The Butler Park defendant cannot rely successfully on the defendant policyholders' knowledge or awareness of the exclusionary language contained in the challenged insurance policies in order to oppose plaintiff's motion. To withstand a

---

insurance contract unenforceable. *Neil,* 379 Pa. Super. at 312 n.4, 549 A.2d at 1310 n.4. In cases that involve adhesion contracts, the court must examine the terms and language of the contract for fairness to determine if the contract is unreasonably favorable to one party. *Id.* As indicated earlier, we do not find the terms of these insurance policies to be unreasonably unfair to the defendant policyholders or, on the other hand, clearly one-sided in favor of the plaintiff. Rather, we find the terms to be clear, certain and readily apparent in the contract. Moreover, as illustrated in *Neil,* the defendant policyholders were insurance consumers and had the opportunity to choose a policy different from the one they purchased from plaintiff. Hence, the defendant policyholders were not "deprived of a meaningful choice in their decision to purchase the instant policy." *Id.* Consequently, the Butler Park defendant cannot now argue that the policy is unfair to the defendant policyholders. For this argument to even make sense, the Butler Park defendant would have had to have been a party to the contract in the first place and they were not. Therefore, the parties limited by the exclusionary language of the contract and summary judgment in favor of plaintiff is appropriate.

motion for summary judgment, the Butler Park defendant must establish that there are genuine issues as to the material facts of the instant case and by arguing the defendant policyholders' awareness or unawareness of the policy language, the Butler Park defendant cannot survive plaintiff's motion. Moreover, the *Hionis* decision was clearly rejected by the Pennsylvania Supreme Court in its decision in the *Standard Venetian Blind, infra,* case. In *Standard Venetian Blind,* the Pennsylvania Supreme Court stated:

"We believe that the burden imposed by *Hionis* fails to accord proper significance to the written contract, which has historically been the true test of the parties' intentions. By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, *Hionis* makes the question of the scope of insurance coverage in any given case depends upon how a fact-finder resolves questions of credibility. Such a process, apart from the obvious uncertainty of its results, unnecessarily delays the resolution of controversy, adding only unwanted costs to the cost of procuring insurance. Thus, *Hionis,* which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance contract, *is not to be followed.* . . . [Thus,] [w]e hold only that where, as here, the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 306-307, 469 A.2d 563, 567 (1983).

Accordingly, we rely on the language of the Pennsylvania Supreme Court and conclude that the parties may not escape the exclusionary language set forth in the insurance contracts, particularly the Butler Park defendant who was not a party to the contract and cannot contest what was said or done at the time of the contract's execution. Thus, for all the reasons set forth herein, we grant plaintiff's motion.

Accordingly, we enter the following order:

ORDER

And now, October 12, 2000, the plaintiff's motion for summary judgment is hereby granted. With respect to the declaratory judgment action, this court concludes that the plaintiff is under no obligation to provide the defendant policyholders with a defense or indemnification in the underlying action.